IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA HERNANDEZ, ET AL.          :        CIVIL ACTION
                                 :
        v.                       :
                                 :
CITY OF PHILADELPHIA, ET AL.     :        NO. 13-287

<u>**MEMORANDUM**</u>

**Padova, J.**                                              **October 15, 2013**

Plaintiffs Linda and Esau Hernandez commenced this negligence action in the Court of Common Pleas of Philadelphia County against the City of Philadelphia (the "City") and the National Railroad Passenger Corporation ("Amtrak") after Linda Hernandez tripped and fell on a sidewalk that runs underneath a railroad overpass. After Defendants removed the action to this Court, Amtrak filed a Motion for Summary Judgment, arguing that we should enter judgment in its favor because it had no duty to maintain the sidewalk. Plaintiffs thereafter filed a Cross-Motion to Remand in which they contend that, if we grant summary judgment in Amtrak's favor, we should remand the case back to state court because we will no longer have subject matter jurisdiction over the case. For the following reasons, we grant both the Motion for Summary Judgment and the Motion to Remand.

**I.     BACKGROUND**

The following facts are undisputed. On January 13, 2011, Linda Hernandez was walking on Castor Avenue, between Sedgley and Glenwood Avenues in Philadelphia. (Hernandez Dep. at 24-25; Hernandez-1; Shomper Dep. at 9-10.) As she emerged from under a railroad bridge that crosses over Castor Avenue, she stepped from the sidewalk into the street to avoid snow that was piled up on the sidewalk. (Hernandez Dep. at 24, 31, 65). When she attempted to return to a cleared portion of the sidewalk, her sneaker got caught in a two-inch deep hole in the sidewalk,

which was covered with snow and ice, causing her to lose her balance and fall backwards. (Id. at 21, 24, 28, 69-69.)   Hernandez suffered injuries to her lower back, neck and right knee as a result to of her fall. (Id. at 71-72.)

The City owns the street and sidewalk that runs underneath the Castor Avenue overpass. (Shomper Dep. at 12, 21, 23; see Shomper-1 (deed conveying land to City).)   At the same time, Amtrak has a right of way for the overpass, which begins at the outside edge of the Castor Avenue sidewalk.  (Shomper Dep. at 11-12.)   Under the bridge, Amtrak's right of way therefore begins with the wall supporting the overpass.  (Id.)   Beyond the overpass on Castor Avenue, there is an embankment that runs from the outside edge of the sidewalk up to the railroad tracks, and there is a billboard on that embankment.  (See Hernandez-1; Shomper Dep. at 15-16.)   Amtrak owns the land on which the billboard is located.  (Shomper Dep. at 17.)   It is responsible for maintaining that land for railroad purposes and obtains advertising revenue from the billboard.  (Id. at 17-18.) The embankment is fenced off, and there is a sign that says No Trespassing.  (Id. at 18.)

Plaintiffs' Complaint asserts state law negligence and loss of consortium claims against both the City and Amtrak.  The Complaint alleges, inter alia, that the City and Amtrak "jointly and/or severally owned, possessed, managed and controlled" the sidewalk, and failed to repair its hazardous condition.  (Compl. ¶¶ 4-5.)   In its Motion for Summary Judgment, Amtrak argues that it had no duty to maintain the sidewalk.  Plaintiffs have filed no opposition to Amtrak's Motion, but the City, which has asserted a cross-claim against Amtrak, has filed an opposition brief.  In addition, Plaintiffs have filed a Cross-Motion to Remand, to which no opposition has been filed.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation omitted). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## III. DISCUSSION

### A. Motion for Summary Judgment

Amtrak argues that it is entitled to the entry of summary judgment in its favor because it had no duty to maintain the sidewalk on which Linda Hernandez fell and, therefore, is not liable in negligence for her injuries. It contends that, under Pennsylvania law, railroad companies are not

responsible for maintenance or repair of sidewalks that pass under railroad trestles unless the sidewalk leads to a station or other facility, thereby conferring an economic benefit upon the railroad.  The City disagrees with Amtrak's characterization of Pennsylvania law and argues that Amtrak, as an abutting property owner, did, in fact, have a duty to maintain the sidewalk on which Linda Hernandez fell.

Under Pennsylvania law, the general rule is that an "owner or tenant in possession [of land] is primarily liable and responsible for keeping in repair the sidewalk in front of the property owned or occupied by him." Ignatowicz v. City of Pittsburgh, 100 A.2d 608, 609-10 (Pa. 1953) (citations omitted); Flynn v. City of Chester, 239 A.2d 322, 323-24 (Pa. 1968) (noting that primary liability for injuries due to a defective or dangerous sidewalk generally lies with the abutting property owners); see also Philadelphia City Code § 11-505(1) (stating that "the sidewalks of all public streets . . . shall be graded, curbed, paved and kept in repair at the expense of the owners of the land fronting thereon").  As the Pennsylvania Supreme Court has explained, "[i]t is only just and reasonable to allow the risks and burdens incident to ownership to fall on those who enjoy benefits through occupancy and control." Ignatowicz, 100 A.2d at 610.

For over one hundred years, however, Pennsylvania court have excepted railroads from general rules requiring land owners to pay for street improvements on adjacent land, reasoning that street improvements do not generally benefit railroads.  In City of Philadelphia v. Philadelphia, Wilmington & Baltimore Railway Co., 33 Pa. 41, 1859 WL 8587 (Pa. 1859), the Pennsylvania Supreme Court concluded that the City could not assess a railroad for the cost of paving a road adjacent to the railroad track, noting that "the paving laws are means of compulsory contribution among common sharers in a common benefit," and declaring that "a railroad cannot, from its very

4

nature, derive any benefit from the paving, while all the rest of the neighborhood may." Id. at *3. Similarly, in City of Allegheny v. Western Pennsylvania Railroad Co., 21 A. 763 (Pa. 1891), the Pennsylvania Supreme Court held that the City of Allegheny could not assess a special municipal tax against a railroad for the paving of a street that abutted the railroad's right of way, explaining that the "constitutionality of assessments for street improvement can only be sustained upon the ground that the property assessed is benefited by the improvement" and concluding that the roadbed of a railroad company "is one species of property which . . . can derive no possible benefit from street improvements." Id. at 764. At the same time, the Court acknowledged that a railroad could be assessed for the paving of a sidewalk outside of a railroad company's passenger depot, freight depot, or lumberyard, types of property that could, unlike a road bed, benefit from street improvements. Id.

In Bonzak v. City of Pittsburgh, 103 Pittsburgh Legal Journal 63 (Allegheny Cnty 1951), the Court of Common Pleas of Allegheny County explicitly considered whether a railroad company was liable for the maintenance of a sidewalk on an abutting or adjoining property pursuant to a City of Pittsburgh ordinance that required "owners of property abutting or adjoining streets to maintain all sidewalk pavement . . . in proper and safe condition." Id. at 69 (internal quotation omitted). The sidewalk in that case was a series of steps and platforms leading up to a pedestrian bridge that spanned the tracks of the railroad. Id. at 64. A boy fell from the lowest landing, which was lacking a guardrail, "down a precipitous slope to a point on the right of way of the Pennsylvania Railroad, beside the tracks." Id. In finding that the railroad could not be liable for the boy's injuries based on its alleged failure to maintain the sidewalk in a safe condition, the court reiterated that "the reason . . . that an abutting or adjoining property owner may be required to

5

lay sidewalk pavements . . . lies in the fact that the paving of . . . sidewalks confer special benefits upon adjoining or abutting properties." Id. at 69. Noting that such paving does not confer any special benefit upon a railroad right of way, the court stated that "[o]nly where such sidewalks are adjacent to a railroad station or platform is a special benefit conferred upon the railroad which renders it liable to assessment for the cost of the improvement and for the maintenance of the sidewalk." Id. at 69.

The Court of Common Pleas of Lackawanna County reached a similar conclusion in City of Scranton v. Delaware, Lackawanna & Western Railroad Co., 76 Pa. D. & C. 357 (Lackawanna Cnty 1951). In City of Scranton, as in the instant case, a pedestrian was injured in a slip and fall on a public sidewalk that ran under a bridge of a railroad company. Id. at 357. The court questioned whether a sidewalk passing under a bridge qualifies as property that abuts the railroad's right of way, but ultimately stated that, whether or not it qualified as abutting property, "the railroad would not be liable to assessment for construction of the sidewalk . . . and ipso facto, would not be responsible for its maintenance." Id. at 359 (citations omitted). Repeating the logic of prior Pennsylvania cases, the court noted that, unlike a situation in which a sidewalk is adjacent to a railroad station, platform or other structure of the railroad, a footway adjacent to the roadbed of a railroad does not confer a special benefit upon the railroad right of way. Id. at 359-60.

More recently, in Linn v. Consolidated Rail Corporation, No. 690 WDA 2000, slip op. (Pa. Super. Ct. Dec. 6, 2000), the Superior Court of Pennsylvania considered whether a railroad could be liable in tort to a pedestrian who tripped in a hole in a sidewalk abutting an embankment that roughly paralleled the railroad's tracks. Id. at 3. In affirming the trial court's grant of summary

judgment in favor of the railroad, the court agreed with the trial court that "[b]ecause no tax or other assessment can be properly levied by a municipality against a railroad from grading or paving a roadbed or right of way, other than that abutting a station, platform or depot, . . . as matter of law, . . . no liability for negligence could arise from [the railroad's] failure to properly care for or maintain the sidewalk . . . ." Id. at 5.  The court went on to comment that "railroad immunity from taxes or liability for an adjoining cartway or footway is grounded on the fact that a railroad is itself a mode of travel and transport which cannot be expected to contribute to or be responsible for an adjoining, indeed competing, avenue of travel." Id.

Amtrak argues that these five cases, taken together, establish a "benefit to the railroad" standard, which absolves it of any duty to maintain the sidewalk in this case.  As it reasons, it has no liability to Ms. Hernandez because the sidewalk on which she fell, which ran under the railroad bridge and abutted no railroad station, depot, platform or other similar structure, provided no benefit to it.  The City counters that that the authority on which Amtrak relies is both non-binding and factually distinguishable and, thus, does not actually create a "benefit to the railroad" standard that is applicable under the circumstances of the instant case.[1]  The City further argues that, even

---

[1] The City maintains that the Supreme Court of Pennsylvania's decisions in City of Philadelphia and City of Allegheny are not controlling because both cases address only whether a municipality could charge a railroad for the cost of installing a sidewalk, not whether the railroad was required to maintain a sidewalk and, in addition, rests on the scope of a municipality's taxing authority, which is not at issue here.  The City further argues that Bonzak, a non-binding lower court decision, is factually distinguishable, because the sidewalk in that case was a series of steps and landings running from the railroad right of way to a public bridge above it, whereas the sidewalk in the instant case ran immediately adjacent to railroad land, namely, the embankment with the billboard.  Likewise it argues that City of Scranton, also a non-binding lower court decision, is factually distinguishable, because the railroad in that case was never in possession of the sidewalk at issue, never exercised any control over it and had nothing to do with its construction or improvement, whereas, in the instant case, Amtrak uses the sidewalk to support its overpass and has a billboard adjacent to and visible from the adjoining sidewalk and roadway.

if there is a "benefit to the railroad" standard that applies here, summary judgment should not be entered in Amtrak's favor because the sidewalk at issue does specially benefit Amtrak. Specifically, the City argues that the sidewalk benefits Amtrak because it (1) runs adjacent to the embankment on which Amtrak installed its income-generating billboard, (2) provides structural support for Amtrak's bridge, and (3) affords Amtrak improved access to the bridge in order to make repairs and perform maintenance.

We recognize that much of the legal authority on which Amtrak relies is quite old, that some of it is not binding on us, and that there are ways to factually distinguish each case from the instant one. We nevertheless hold that the above authority, as a whole, points to the inescapable conclusion that Pennsylvania law will not encumber a railroad with financial responsibility for maintaining sidewalks that abut its right of way where those sidewalks do not otherwise benefit a station, depot, platform or other similar structure. In so holding, we necessarily reject the City's alternative argument that Amtrak must maintain the sidewalk at issue because it erected a billboard on the embankment and has a railway bridge that spans the sidewalk. We also reject the City's argument that the sidewalk specially benefits Amtrak insofar as it provides access to Amtrak to service the bridge. Accord Logan v. City of Chester, Civ. A. No. 12-1627, Order at 4 ¶ 5 (E.D. Pa. July 18, 2013) (concluding, in an order denying summary judgment, that the "incidental use" of sidewalk to conduct inspections and repairs of railroad bridge spanning sidewalk "does not confer a special benefit on Amtrak").

We thus conclude that Amtrak had no duty to maintain the sidewalk on which Ms. Hernandez fell, grant Amtrak's Motion for Summary Judgment and enter judgment in favor of

---

The City also asserts that we should not rely on Linn, because it is an unpublished Pennsylvania Superior Court opinion.

Amtrak on both of Plaintiffs' claims against it,[2] as well on the City's cross-claim.[3]

### B. Cross-Motion to Remand

Plaintiffs argue in their Cross-Motion to Remand that, if we grant summary judgment in Amtrak's favor, we must also remand the case to the Philadelphia Court of Common Pleas, because there is no longer a basis for federal jurisdiction. Neither the City nor Amtrak has filed any opposition to this Motion.

As noted above, Plaintiffs initially commenced this case in the Philadelphia Court of Common Pleas. Amtrak removed the case to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331, because it is a federal corporation, i.e., a corporation created by an Act of Congress. As we are now entering judgment in Amtrak's favor on all the claims against it, the only claims remaining in the case are state law tort claims between Pennsylvania citizens. Accordingly, there is no longer a basis for federal subject matter jurisdiction.

Under 28 U.S.C. § 1447(c), "if at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Moreover, "the rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been

---

[2] Plaintiff Esau Hernandez's loss of consortium claim against Amtrak is derivative of Ms. Hernandez's negligence claim against Amtrak. See Stipp v. Kim, 874 F. Supp. 663, 666 (E.D. Pa. 1995) (citations omitted). Accordingly, because we grant judgment in Amtrak's favor on the primary negligence claim, we must grant judgment in Amtrak's favor on the loss of consortium claim as well. Id. (citation omitted).

[3] Because we grant summary judgment in Amtrak's favor on this basis, we need not address Amtrak's alternative argument that federal law preempts any attempt by a local government to impose upon Amtrak an obligation to maintain sidewalks adjacent to its property. (Amtrak's Mem. at 9-13 (citing 49 U.S.C. § 24301(1)(l))).

dismissed the case no longer belongs in federal court."[4]   Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir. 1990) (citation omitted); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless consideration of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (citations omitted)).   In light of this authority, and in the absence of any opposition to Plaintiffs' Cross-Motion to Remand, we grant Plaintiffs' Motion and remand the case to the Philadelphia Court of Common Pleas, where it was initiated.

## IV.   CONCLUSION

For the foregoing reasons, we grant both Amtrak's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Order Remanding Action to State Court.  We therefore enter summary judgment in Amtrak's favor and remand this case to the Court of Common Pleas of Philadelphia County.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.

---

[4] In diversity cases, the existence of federal jurisdiction is determined at the time that the suit was filed and, if found to be present, continues until the end of the case.  Kaufman v. Allstate N. J. Ins. Co., 561 F.3d 144, 152 (3d Cir. 2009) (citations omitted).  However, this time-of-filing rule does not apply in federal question cases.  New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1503-04 (3d Cir. 1996).